**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Case No.: 1:10-cv-00159-MR**

| | |
|---|---|
| SOCIEDAD ESPANOLA DE ELECTROMEDICINA Y CALIDAD, S.A., ) ) ) ) | |
| Plaintiff, ) ) | **MEMORANDUM OF DECISION AND ORDER** |
| vs. ) ) | |
| BLUE RIDGE X-RAY CO, INC., DRGEM USA, Inc., and DRGEM CORP., ) ) ) ) | |
| Defendants. ) ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Attorney's Fees [Doc. 225]; the Defendants' Renewed Motion for Judgment as a Matter of Law on Damages, or for a New Trial on Damages, or for a Remittitur [Doc. 236]; the Plaintiff's Motion for Enhanced Damages [Doc. 250]; and the Plaintiff's Motion for Prejudgment Interest and Post-Judgment Interest [Doc. 256].

# I.     FACTUAL AND PROCEDURAL BACKGROUND

This is an action for patent infringement brought by Sociedad Espanola de Electromedicina y Calidad, S.A. ("Sedecal") against the Defendants Blue

Ridge X-Ray Company, Inc. ("Blue Ridge X-Ray"), DRGEM USA, Inc. ("DRGEM USA"), and DRGEM Corporation ("DRGEM Corp.").[1] [Doc. 1]. Sedecal is a Spanish corporation which designs and sells X-ray and digital radiography equipment for use in the medical industry. [Doc. 49 at 3]. DRGEM USA is a Florida corporation and a subsidiary of DRGEM Corp., a South Korean corporation. [Id. at 2]. Blue Ridge X-Ray is a North Carolina corporation doing business in Arden, North Carolina, which sells X-ray and digital radiography equipment, including Sedecal and DRGEM products. [Id.].

In its First Amended Complaint, Sedecal asserted one claim for infringement of U.S. Patent No. 6,642,829 ("the '829 Patent"), a patent for a high voltage transformer owned by Sedecal pursuant to assignment from the inventor, a Sedecal employee. [Doc. 21 at 4]. Specifically, Sedecal alleged that DRGEM Corp. manufactured, sold, and exported for sale X-ray generator products which infringed one or more claims of the '829 Patent. [Id.]. Sedecal further alleged that DRGEM USA infringed the '829 Patent by selling these allegedly infringing DRGEM products to Blue Ridge X-Ray, and

---

[1] This action was originally brought by two plaintiffs, Sedecal and Sedecal USA, Inc. (Sedecal USA). [Doc. 1]. By First Amended Complaint filed on November 1, 2010, Sedecal, USA was removed as a plaintiff.

that Blue Ridge X-Ray in turn infringed the '829 Patent by selling and importing for sale the allegedly infringing DRGEM products.  [Id. at 4-5].

In their Answer and Counterclaims, the Defendants raised numerous affirmative defenses, including the defenses of patent invalidity and failure to mark the products with the patent number.  [Doc. 27].  They also counterclaimed for declarations of non-infringement and invalidity.  [Id.].

The parties proceeded in accord with all stages of the Amended Utility Patent Claim Construction Scheduling Order.  [Doc. 37].  A Markman[2] hearing was conducted on February 21, 2012, and the Court entered a Claim Construction Order on August 15, 2013 [Doc. 62].  Thereafter, the Court entered a Utility Patent Pretrial Order and Case Management Plan, setting deadlines for the completion of discovery and the filing of dispositive motions. [Doc. 66].  Upon the close of discovery, the Defendants moved for summary judgment on the issues of infringement and willfulness.  [Doc. 86].  The Plaintiff, in turn, moved for summary judgment on the issue of validity.  [Doc. 91].  On September 22, 2014, the Court entered an Order granting the Defendant's motion for summary judgment and denying the Plaintiff's motion for partial summary judgment on the grounds that the transformer claimed in

_____

[2] Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

the '829 Patent does not function and thus fails to comply with 35 U.S.C. §§ 101 and 112, thereby rendering the patent invalid. [Doc. 105].

Sedecal appealed to the Court of Appeals for the Federal Circuit. [Doc. 108]. On July 31, 2015, the Federal Circuit issued an opinion reversing this Court's grant of summary judgment and remanding for further proceedings. [Doc. 121]. Upon remand, this matter proceeded to a jury trial beginning on January 11, 2016. The trial was bifurcated into two phases. After finding infringement in the first phase [Doc. 202], the same jury heard evidence on damages and willfulness during the second phase.

During the second phase of the trial, Sedecal presented the testimony of Manuel Martinez-Garcia, the president and founder of Sedecal. Mr. Martinez-Garcia testified that Sedecal is one of the few players in the U.S. x-ray generator market [TR2[3] at 98-99], and that prior to the Defendants' infringement, Sedecal was unique in the market with a transformer of the combination of small size and high power enabled by the '829 Patent [Id. at 31-32, 77-79]. Sedecal also presented the testimony of Angel Diaz-Carmena, the head of engineering at Sedecal and inventor of the '829

---

[3] The transcript of the two phases of the trial are filed in the docket as Documents 212, 213, 215, 216, and 218. The Court will refer to the transcript of the first phase of the trial as "TR1" and the transcript of the second phase of the trial as "TR2."

Patent.  Mr. Diaz-Carmena testified regarding his work in developing the compact, light-weight transformer that produced very high voltages, allowing for the reduction in size, cost and weight for Sedecal's line of high frequency generators.  [TR1 at 32-34].

Sedecal's technical expert, Melvin Siedband, then explained the patented innovation, and the time and investment required to develop the transformer that is covered by the '829 Patent.  [TR1 at 129-30; TR2 at 192-94].  Manuel Martinez-Alvarez, the marketing and sales manager of Sedecal, testified as to the profound impact Sedecal's patented product had on the market.  [TR2 at 377-80].  Both Sedecal's president, Mr. Martinez-Garcia, and Mr. Martinez-Alvarez testified that it was Sedecal's policy to not license its '829 Patent.  [Id. at 80-81, 380-81].

Michael Jeffords, Sedecal's damages expert, opined that, based on the cost savings in shipping and manufacturing resulting from use of the patented technology, an approximate reasonable royalty rate would be at least $500 per infringing unit.  [TR2 at 427].  Mr. Jeffords also provided the jury with a calculation of the average profits realized by DRGEM Corp. and DRGEM USA for the sale of the infringing products, which was $3,340 per unit.  [Id. at 436].  Finally, Mr. Jeffords discussed various factors for the jury to consider in determining an appropriate damages award.  [Id. at 424-42].

After Sedecal rested its case, Defendants presented essentially the same arguments now made in the present motion, in the form of a Rule 50 motion. [TR2 at 493-98]. The Court denied that motion. [Id. at 511]. The Defendants then put on evidence, after which they again presented the same arguments in a second Rule 50 motion.[4] [Id. at 885-86]. The Court denied this motion also. [Id. at 886]. During closing argument, the Defendants' counsel argued that damages should be severely limited, urging the jury to award only $40,896 for the five-plus years of infringing sales, and characterizing the expert testimony of a minimum royalty as allegedly "pulled . . . out of the air." [Id. at 931-32].

The Court then delivered the jury instructions, including several specifically requested by Defendants. This included instructions on the Georgia Pacific factors[5] for determining a reasonable royalty, instruction on the "apportionment" of damages, and consideration of the "smallest salable unit" and the "entire market value" rule. [TR2 at 940-46]. On January 19, 2016, the jury rendered its verdict, finding the Defendants liable for damages

---

[4] Notably, the Defendants did not present any expert evidence regarding Sedecal's damages.

[5] Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

in the amount of $852,000 and further finding that the infringement committed by DRGEM USA and DRGEM Corp. was willful.[6] [Doc. 206].

The Defendants now move pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure for an Order entering judgment as a matter of law on the issue of damages under Rule 50 or, in the alternative, to enter an Order under Rule 59 giving Sedecal the option of choosing whether to have a new trial on damages or to accept a remittitur. [Doc. 236]. Sedecal opposes the Defendants' motion and in turn moves for an award of enhanced damages based on the jury's finding of willfulness. [Doc. 250]. Sedecal also moves for an award of attorneys' fees, as well as an award of prejudgment and post-judgment interest. [Docs. 225, 256].

Having been fully briefed, these matters are now ripe for disposition.

## III.  DISCUSSION

### A.  Defendants' Motion for Judgment as a Matter of Law

#### 1.  Standard of Review

In ruling on a motion for judgment as a matter of law or a motion for new trial in a patent case, a district court applies the law of the regional circuit

---

[6] Sedecal withdrew its claim for willfulness against Blue Ridge X-Ray prior to the commencement of the second phase of the trial.

in which the district court sits.  See Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d 629, 638 (Fed. Cir. 2011).

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a district court may grant a judgment as a matter of law "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the [non-moving] party . . . ."  Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citing Fed. R. Civ. P. 50(b)).  The district court must deny a motion for judgment as a matter of law if, "giving the [non-movant] the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for him."  Cline, 144 F.3d at 301 (quoting Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir. 1984)).  In making such a determination, the court cannot re-weigh the evidence or the credibility of the witnesses; rather, the court must "assume that testimony in favor of the non-moving party is credible, unless totally incredible on its face, and ignore the substantive weight of any evidence supporting the moving party."  Cline, 144 F.3d at 301 (internal quotation marks and citation omitted).

By contrast, when presented with a motion for a new trial pursuant to Rule 59(a), the court is permitted to weigh the evidence and consider the credibility of the witnesses.  King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010).  A new trial should be granted where "(1) the verdict is against the

clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. and Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996) (citation omitted). The granting or denial of a motion for a new trial is a matter within the discretion of the trial court. Cline, 144 F.3d at 301.

A remittitur pursuant to Rule 59(a) "is the established method by which a trial judge can review a jury award for excessiveness." Atlas Food, 99 F.3d at 593. Under the process of remittitur, the Court orders a new trial unless the plaintiff accepts a reduced damages award. Id. "Indeed, if a court finds that a jury's award is excessive, it is the court's duty to require a remittitur or order a new trial." Id.

## 2. Discussion

The Defendants contend that the jury's award of $852,000 is not supported by substantial evidence because the award was in excess of the reasonable royalty rate "requested" by Sedecal and testified to by Sedecal's damages expert. [Doc. 237 at 14].

At the outset, the Court notes that, contrary to the Defendants' argument, Sedecal never limited its request for damages to the royalty rate

calculated by its expert. In fact, during closing arguments, Sedecal's attorneys argued to the jury that Mr. Jeffords' estimation of $500 per infringing unit was "the floor . . . the bare bones cost savings." [TR2 at 921; see also id. at 937]. Counsel went on to argue that because there was evidence to show a significant profit margin for each infringing unit sold by the Defendants, "[t]here could be a damages royalty amount of $3,000 per unit and there would still be profit for the defendants." [Id. at 921]. The Defendants' contention that Sedecal somehow limited its request for damages to the rate calculated by Mr. Jeffords is simply inaccurate.

In any event, however, the mere fact that the jury awarded more than Mr. Jeffords calculated as a reasonable royalty is not a sufficient basis to overturn the jury's verdict. See Mercexchange, L.L.C. v. eBay, Inc., 275 F. Supp. 2d 695, 709-10 (E.D. Va. 2003) ("[T]he jury was entitled to calculate an amount they believed compensated the plaintiff for the defendants' infringement. That this amount is greater than the plaintiff asked for is of no consequence."), aff'd in part, rev'd in part sub nom. MercExchange, LLC v. eBay, Inc., 401 F.3d 1323 (Fed. Cir. 2005), vacated and remanded sub nom. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), and judgment entered, 660 F. Supp. 2d 653 (E.D. Va. 2007). Having found infringement by the Defendants, the jury was authorized to award "damages adequate to

compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284. In determining the reasonable royalty, the jury was instructed to consider evidence of a variety of factors, including:

1. Any royalties received by Sedecal for the licensing of the patent at issue in this case, proving or tending to prove an established royalty.

2. The rates paid by the Defendants to license other patents comparable to the '829 patent.

3. The nature and scope of the hypothetical license, as exclusive or non-exclusive or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. Sedecal's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between Sedecal and the Defendants, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of Sedecal, the existing value of the invention to Sedecal as a generator of sales of its non-patented items, and the extent of such collateral sales.

7.      The duration of the '829 Patent, the geographic scope of the patent, and the period of time for which you are making your determination.

8.      The established profitability of the product made under the '829 Patent, its commercial success, and its current popularity.

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.      The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Sedecal, and the benefits to those who have used the invention.

11.      The extent to which the Defendants have made use of the invention, and any evidence that shows the value of that use.

12.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.      The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the defendants.

14.      Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

[TR2 at 942-44]. Sedecal presented significant evidence to the jury to support several of these factors, including evidence that Sedecal had a policy of never licensing the '829 Patent technology [TR2, 431-32]; that the parties were in direct competition with each other [TR2, 431-33]; that DRGEM sought to compete by undercutting Sedecal's pricing [TR2 at 432-33; PTX 64; PTX 67]; and that the Defendants had an average profit of $3340 per infringing unit [TR2 at 434-36]. This evidence substantially supports the jury's award of a significantly higher reasonable royalty amount than the minimum baseline rate calculated by Mr. Jeffords, which primarily took into account the savings in material and shipping costs that the technology provided.[7] Because there is substantial evidence to support the jury's calculation of Sedecal's damages, the Defendants' motion for a judgment as a matter of law or for a new trial on this basis is denied.

Alternatively, the Defendants urge the Court to order a remittitur of the jury's award of damages and instead award Sedecal an amount based on the value of the transformer alone, not the value of the entire generator. The Defendants' contention, however, is flawed. In proving its damages, Sedecal

---

[7] The Defendants also raise several objections to Mr. Jeffords' analysis, arguing that it was flawed in several respects. The Court, however, need not reach these issues as there was other substantial evidence to support the jury's damages determination.

presented evidence regarding generator sales data because in the x-ray generator industry, the generator is the smallest salable patent practicing unit. Representatives from Sedecal and the Defendants testified that, aside from the rare exceptions of selling a replacement transformer for an existing unit no longer under warranty, it was not customary to sell the transformers individually. Therefore, the Defendants' contention that the damages award should have been based on the cost of a few replacement transformers is without merit. Mr. Martinez-Garcia testified that the transformer is "the thing that drives everything," that "[t]here is a market for high frequency x-ray generators," and that there are no companies that attempt to sell -- and no customers ready to buy -- transformers alone. [TR2 at 21-22]. He further testified that Sedecal only sells replacement transformers under rare circumstances where a transformer breaks and the generator is beyond warranty. [Id. at 22-23]. Even DRGEM's own witness, Dr. Choi, testified that the transformer does not appear on their price list, and that nobody sells transformers as end items. [Id. at 334]. Given that neither Sedecal nor the Defendants marketed transformers separate and apart from the generators, the jury properly disregarded evidence of the rare sale of a replacement part for a previously sold end item when assessing the reasonable royalty. For these reasons, the Defendants' request for a remittitur is also denied.

**B.    Plaintiff's Motion for Enhanced Damages**

Section 284 of the Patent Act provides that in a case of infringement the court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.  The Supreme Court has long described § 284 as providing for such enhanced damages in cases involving "willful or bad-faith infringement." Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508 (1964); see also Dowling v. United States, 473 U.S. 207, 227 n.19 (1985) (noting enhanced damages recoverable for "willful infringement"); Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, 527 U.S. 627, 648 n.11 (1999) (describing enhanced damages under § 284 as "punitive" in nature); Beatrice Foods Co. v. New England Printing & Lithographing Co., 923 F.2d 1576, 1578 (Fed. Cir. 1991) (noting that enhanced damages were traditionally "premised on willful infringement or bad faith").

In 2007, the Federal Circuit developed a two-part test for determining whether a "willful" infringement has occurred sufficient to warrant consideration of an award of enhanced damages under § 284. See In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007) (en banc).  Under Seagate, a plaintiff seeking enhanced damages was first required to demonstrate "by clear and convincing evidence that the infringer acted

15

despite an objectively high likelihood that its actions constituted infringement of a valid patent." Id. at 1371. This objectively defined risk was to be determined without regard for "[t]he state of mind of the accused infringer." Id. Significantly, as a matter of law the required showing of objective recklessness could not be met if the patent was "reasonably subject to challenge." Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 776 F.3d 837, 844 (Fed. Cir. 2015). Thus, willful infringement could not be found where the accused infringer "raised a 'substantial question' as to the validity or noninfringement of the patent" during the infringement proceedings. Id. Recognizing that this objective inquiry involved "mixed questions of law and fact," the Federal Circuit held that this was an issue "best decided by the judge as a question of law subject to *de novo* review." Id. (citation omitted).

The second prong of the Seagate test was a subjective inquiry, by which the plaintiff had to show by clear and convincing evidence that the risk of infringement "was either known or so obvious that it should have been known to the accused infringer." Seagate, 497 F.3d at 1371. The subjective inquiry presented a question of fact to be resolved by the jury. See Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1236 (Fed. Cir. 2011). Only once both prongs were satisfied could the court proceed to consider whether

to exercise its discretion and award enhanced damages under § 284. Seagate, 497 F.3d at 1371.

Seagate was controlling legal authority at the time that this matter was tried in January 2016. Accordingly, pursuant to Seagate, the Court submitted the matter of willful infringement to the jury, along with the following jury instruction:

> Sedecal must prove by clear and convincing evidence the following elements:
>
> 1. There was an objectively high likelihood of infringement that was either known or so obvious that it should have been known to the Defendant under consideration; and
>
> 2. The Defendant under consideration acted despite the objectively high likelihood that its actions infringed a valid patent.

[TR2 at 947]. As noted above, the jury returned a verdict in favor of the Plaintiff, finding that DRGEM USA and DRGEM Corp. both acted willfully in infringing the '829 Patent. The Court deferred entering a judgment on the jury's verdict, however, in order to consider the objective prong of the Seagate willfulness analysis.

At the time of the trial of this matter the Supreme Court had granted certiorari in a matter that raised the question of whether the Seagate standard was consistent with the language of § 284. On June 13, 2016,

while this matter was still under advisement, the Supreme Court issued its decision in Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S. Ct. 1923 (2016).  In Halo, the Supreme Court overruled Seagate, concluding that the Federal Circuit's two-part inquiry was "unduly rigid, and it impermissibly encumbers the statutory grant of discretion to district courts."  Halo, 136 S. Ct. at 1932 (internal quotation marks and citation omitted).  As the Halo Court explained:

> The principal problem with Seagate's two-part test is that it requires a finding of objective recklessness in every case before district courts may award enhanced damages.  Such a threshold requirement excludes from discretionary punishment many of the most culpable offenders, such as the "wanton and malicious pirate" who intentionally infringes another's patent — with no doubts about its validity or any notion of a defense — for no purpose other than to steal the patentee's business.  Under Seagate, a district court may not even consider enhanced damages for such a pirate, unless the court first determines that his infringement was "objectively" reckless.  In the context of such deliberate wrongdoing, however, it is not clear why an independent showing of objective recklessness — by clear and convincing evidence, no less — should be a prerequisite to enhanced damages.

Id. (internal citation omitted).

Thus, in Halo, the Supreme Court overruled the objective prong of Seagate, leaving the issue of willfulness as solely a factual issue which can

readily be addressed by a jury. Here, the jury was instructed to make a factual determination as to whether the DRGEM Defendants acted willfully, and the jury answered this question in the affirmative. In light of Halo, the Court determined that this finding, standing alone, was sufficient to support a finding of willfulness [Doc. 232], and thus a judgment was entered upon the jury's verdict finding that the Defendants' infringement of the '829 Patent was willful [Doc. 233].

The jury's finding of willful infringement, however, "does not mandate that damages be enhanced, much less mandate treble damages." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992); see also Halo, 136 S. Ct. at 1933 ("[N]one of this is to say that enhanced damages must follow a finding of egregious conduct."); Presidio Components, Inc. v. American Tech. Ceramics Corp., No. 14-cv-02061-H-BGS, 2016 WL 4377096, at *20 (S.D. Cal. Aug. 17, 2016) ("an award of enhanced damages need not follow a finding of willful infringement"). Despite the jury's finding of willfulness, the Court still has discretion to decide whether to award enhanced damages and in what amount such damages should be awarded. Halo, 136 S. Ct. at 1932. In exercising that discretion, the Court remains mindful that enhanced damages are designed to punish "egregious infringement behavior" and should not imposed in the run-of-the-mill case. Id. (noting that a trial court's

discretion "has narrowed . . . so that such damages are generally reserved for egregious cases of culpable behavior") (internal quotation marks, alteration, and internal citation omitted).

Sedecal urges the Court to analyze the various factors set forth in <u>Read Corp. v. Portec, Inc.</u>, 970 F.2d 816 (Fed. Cir. 1992) in determining whether an award of enhanced damages is warranted in this case.[8]  In <u>Halo</u>, however, the Supreme Court cautioned that "there is no precise rule or formula for awarding damages under § 284 . . . ."  <u>Halo</u>, 136 S. Ct. at 1932 (internal quotation marks and citation omitted).   Rather, the Court stated that in determining whether enhanced damages are appropriate, the district court should "take into account the particular circumstances of each case."  <u>Id.</u> at 1933.  Thus, while consideration of the <u>Read</u> factors may be helpful, they are not dispositive of the issue at hand.  <u>Finjan, Inc. v. Blue Coat Sys., Inc.</u>, No. 13-cv-03999-BLF, 2016 WL 3880774, at *16 (N.D. Cal. July 18, 2016) ("In light of <u>Halo</u>, . . . the <u>Read</u> factors are now one set of guidelines courts can use to evaluate alleged misconduct, but are no longer the sole set of

---

[8] The <u>Read</u> factors are as follows: (1) whether the infringer engaged in deliberate copying of the patented design; (2) whether the infringer investigated the scope of the patent and formed a good-faith belief regarding invalidity or non-infringement; (3) the infringer's litigation conduct; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.  <u>Read</u>, 970 F.2d at 827.

criteria."). Rather, "the touchstone for awarding enhanced damages after <u>Halo</u> is egregiousness." <u>See</u> <u>Trustees of Boston Univ. v. Everlight Electronics Co.</u>, __ F.3d __, 2016 WL 3976617, at *2 (D. Mass. July 22, 2016).

Upon review of the particular circumstances of this case, including the trial record and the arguments of the parties, the Court in the exercise of its sound discretion declines to award Sedecal enhanced damages in this case.

While Sedecal produced evidence at trial to suggest that the DRGEM Defendants knowingly and intentionally copied Sedecal's transformer design, the Defendants presented evidence that they conducted a reasonable investigation of Sedecal's patent claims and made a good faith determination that the patent was not infringed by their activities and that the patent was likely invalid. Indeed, DRGEM's head engineer reached exactly the same conclusions in July 2007 that this Court later reached in its summary judgment opinion: namely, that the DRGEM transformer does not infringe the '829 patent because it does not have "two insulated chambers" or two separate "magnetic cores." DRGEM's conclusions in 2007 were reasonable because they are the same conclusions that this Court reached, and "it would be difficult to conjure up a defense which would be more 'reasonable' than one expressly adopted by a federal judge . . . ." <u>Arlington</u>

Indus., Inc. v. Bridgeport Fittings, Inc., 692 F. Supp. 2d 487, 504 (M.D. Pa. 2010).

The Federal Circuit reversed this Court's claim construction on which the 2007 summary judgment opinion was ultimately based.  In so doing, however, the Circuit acknowledged that "the claims of the '829 patent are no model of clarity" and that "clearer drafting would have been helpful." Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co., 621 F. App'x 644, 647 (Fed. Cir. 2015).  Consequently, the Federal Circuit did "not fault [this Court's] efforts to make sense of the patent . . . ." Id.  After the case was remanded, DRGEM Corp. immediately altered its design and stopped importing the accused product into the United States. The Defendants continued to press legitimate defenses at trial that were reasonably based on the evidence and the opinions of a qualified patent attorney, David Carter.  Although these defenses were ultimately rejected by the jury, they were not meritless.  Moreover, despite Sedecal's arguments to the contrary, none of the Defendants' actions during the course of this litigation rise to the level of misconduct warranting the imposition of enhanced damages.  Finally, the Court notes that Sedecal recovered a significant damages award for the Defendants' culpable conduct.  As discussed supra, Sedecal's expert opined to a reasonable royalty rate of

$500 per infringing unit, but the jury awarded nearly three times that amount, apparently taking into consideration the amount of profit that the Defendants realized from the infringing sales. Sedecal has been amply compensated for the Defendants' infringement, a consideration which also weighs against the enhancement of damages. See Enplas Display Device Corp. v. Seoul Semiconductor Co., No. 13-cv-05038 NC, 2016 WL 4208236, at *8 (N.D. Cal. Aug. 10, 2016) (declining to award enhanced damages where plaintiff was "awarded the maximum amount . . . sought" and "recovered the full value of its requested relief").

For all of these reasons, Sedecal's motion for enhanced damages is denied.

## C. Plaintiff's Motion for Attorney's Fees

Sedecal moves the Court to find that this has been an "exceptional case" within the meaning of 35 U.S.C. § 285 and to award Sedecal a total of $2,315,000 in attorneys' fees. [Doc. 225].

Pursuant to the Patent Act, the Court may make an award of reasonable attorneys' fees to the prevailing party "in exceptional cases." 35 U.S.C. § 285. As it is a matter unique to patent law, the determination of a fee award pursuant to § 285 is governed by Federal Circuit law. Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1366 (Fed. Cir. 2007).

As the Supreme Court has recently explained, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014). Whether a case is "exceptional" is a matter within the court's discretion, considering the totality of the circumstances. Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 (2014). Even in the exceptional case, the decision to award attorneys' fees and the amount thereof are still matters within the Court's sound discretion. MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 916 (Fed. Cir. 2012) ("If the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is justified.").

In the present case, the Court need not determine whether the case is exceptional because even if the Court were to make such a determination, Sedecal has failed to prove that its claimed fees – which are in excess of two million dollars -- are reasonable.

"In calculating an attorney fee award, a district court usually applies the lodestar method, which provides a presumptively reasonable fee amount, by multiplying a reasonable hourly rate by the reasonable number of hours

24

required to litigate a comparable case." Lumen View Tech. LLC v. Findthebest.com, Inc., 811 F.3d 479, 483 (Fed. Cir. 2016) (citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554, 551 (2010)) (internal citations omitted). The burden is on the fee applicant to justify the reasonableness of the requested fee. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

In the present case, Sedecal supported its request for an award of attorneys' fees with only the affidavit of its lead counsel, Mr. Rademaker. [Doc. 230]. His affidavit, however, is clearly inadequate to support the fee request. First, the affidavit fails to specify the specific work performed or the hourly rate specifically claimed for each task. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."). Further, the affidavit fails to identify which attorneys or paralegals performed which tasks, and it fails to disclose how much time each attorney or paralegal spent performing specific tasks. See Southern Bank & Trust Co. v. MLP Dev. Corp., No. 2:15cv53, 2015 WL 5567078 at *5 (E.D. Va. Sept. 21, 2015) (denying attorney fee award where "no information was provided, such as is typically proffered in the form of billing invoices, which identified what specific tasks were performed, who performed them, and how much time was billed for each task by each attorney"). Finally, the affidavit does not even attempt

to explain why the requested rates are reasonable in this forum. Even if Mr. Rademaker had expressed some opinion regarding the reasonableness of the requested rates, the opinion of a party's own attorney is generally not sufficient. A party's request for a fee award should be supported by a separate affidavit or affidavits from local, independent attorneys establishing the prevailing market rate. See Blum, 465 U.S. at 895 n.11 (requiring proof "in addition to the attorney's own affidavits" regarding prevailing market rate in the community "for similar services by lawyers of reasonably comparable skill, experience and reputation"). Lacking such basic information, the Court cannot assess the reasonableness of the fees requested by Sedecal.

In his affidavit, Mr. Rademaker suggests that "further break-down of the fees *may be* available" and that "subject to concerns of confidentiality and privilege/immunity, the description of legal services in the actual invoices *may be* made available to the Court." [Doc. 230 at ¶ 10 (emphases added)]. Such "further break-down," however, was not presented to the Court until *after* the Defendants filed a response to Sedecal's motion for attorneys' fees, urging the Court to deny the request due to the lack of evidence to support it. Only then did Sedecal file a reply brief with several hundred pages of supporting documentation attached. [See Docs. 240, 243].

Attaching billing records to a reply brief is insufficient to support Sedecal's request for fees. It is the well-established rule in this Court that reply briefs are limited only to new matters. [Doc. 66 at 9]. It was incumbent upon Sedecal to present any evidence in support of its request for attorneys' fees at the time that the motion was originally filed. Presenting any such evidence only with the filing of a reply brief deprived the Defendants of an opportunity to address such evidence in their response.[9] The Defendants would be unduly prejudiced if the Court were to now consider the evidence submitted in support of Sedecal's reply brief. To cure that prejudice would require further briefing and further delays in the resolution of this matter. A "request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437. Accordingly, Sedecal's request for an award of attorneys' fees is denied.

Even if the Court were to consider Sedecal's untimely submissions in support of its request for a fee award, the Court would still decline to award

---

[9] The Defendants had attempted to respond to such evidence by the filing of a surreply brief. [Doc. 261]. The Defendants failed, however, to seek leave of Court to file a surreply, and Sedecal promptly moved to strike it. [Doc. 267]. The Court granted Sedecal's motion, and the Defendants' surreply was stricken. [Doc. 279]. Sedecal's failure to file the required support in a timely manner and then moving to bar the Defendants from responding at all to Sedecal's late filing illustrates why such late filing tends to thwart the efficient administration of justice.

fees in this case. This was a protracted, hard-fought contest. While the jury ultimately found willful infringement, the Defendants presented reasonable arguments and defenses to Sedecal's claim of infringement. Indeed, the reasonableness of these defenses is evidenced by the fact that this Court initially resolved all of the parties' disputes in the Defendants' favor, granting summary judgment and dismissing the case. [Doc. 105]. Although the Federal Circuit reversed this Court's claim construction on which the dismissal was ultimately based, in so doing the Circuit acknowledged that "the claims of the '829 patent are no model of clarity" and that "clearer drafting would have been helpful." Sociedad, 621 F. App'x at 647. Consequently, the Federal Circuit did "not fault [this Court's] efforts to make sense of the patent . . . ." [Id.].

After the case was remanded, the Defendants presented legitimate defenses at trial that were reasonably based on the evidence and the opinions of a qualified patent attorney, David Carter. All of these factors would tend to support a conclusion that the case is not exceptional, if the Court were to reach that issue. In summary, notwithstanding Sedecal's arguments to the contrary, none of the Defendants' actions during the course of this litigation rise to the level of misconduct warranting the imposition of

fees.  For these reasons, the Court would not award fees even if Sedecal's motion had been properly supported.

For all of these reasons, Sedecal's request for an award of attorneys' fees pursuant to § 285 is denied.

### D.  Plaintiff's Motion for Prejudgment and Post-Judgment Interest

#### 1.  Prejudgment Interest

Pursuant to 35 U.S.C. § 284 of the Patent Act, Sedecal as the prevailing party is entitled to "damages adequate to compensate for the infringement . . . together with interest and costs as fixed by the court."  35 U.S.C. § 284.  The Supreme Court has held that prejudgment interest "should ordinarily be awarded" unless there is some justification for withholding such an award.  General Motors Corp. v. Devex Corp., 461 U.S. 648, 654 (1983).  As the Devex Court explained:

> In the typical case an award of prejudment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement.  An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment.

Id. at 655-56; see also Bio-Rad Labs., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 967 (Fed. Cir. 1986) (noting that award of prejudgment interest normally should be from the date of infringement to the date of payment, "since only such award will satisfy 'Congress' overriding purpose [in section 284] of affording patent owners complete compensation'") (quoting Devex, 461 U.S. at 655).

As the determination of the rate of prejudgment interest to be awarded is not an issue unique to patent law, the Court applies the law of the regional circuit in determining the rate of prejudgment interest. See Transmatic, Inc. v. Gulton Indus., Inc., 180 F.3d 1343, 1347 (Fed. Cir. 1999). The Fourth Circuit has held that the determination of the rate of prejudgment interest is generally a matter within the discretion of the trial court. See United States v. Dollar Rent A Car Sys., Inc., 712 F.2d 938, 940 (4th Cir. 1983). When exercising that discretion, however, the Court is guided by the purpose of prejudgment interest, which is "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." Bio-Rad Labs., 807 F.2d at 969 (quoting Devex, 461 U.S. at 655).

Here, Sedecal argues that prejudgment interest should be awarded at the North Carolina statutory rate of eight percent per annum, see N.C. Gen.

Stat. §§ 24-1, 24-5. [Doc. 256 at 2]. While the Defendants do not dispute that Sedecal is entitled to an award of prejudgment interest, they urge the Court to calculate such interest using the Treasury Bill rate, which currently stands at 0.45%. [Doc. 266 at 3-4]. Both of these rates have been used by courts in awarding prejudgment interest in patent cases. See Joy Techs., Inc. v. Flakt, Inc., 954 F. Supp. 796, 808 (D. Del. 1996). Upon careful consideration, however, the Court concludes that neither rate urged by the parties would be appropriate in this case. The legal rate greatly exaggerates the time value of money during the relevant period, while the Treasury Bill rate is designated to be a deeply discounted assessment of that value. Rather, the Court finds that use of the prime rate[10] would be the most appropriate rate to be applied, as that prime rate most "closely approximates the yield that [Sedecal] would have expected had it received the royalties and reinvested them." See Boeing Co. v. United States, 86 Fed. Cl. 303, 323 (2009); see also Monsanto Co. v. Strickland, 604 F. Supp. 2d 805, 817-18 (D.S.C. 2009) (awarding prejudgment interest to prevailing patentee at a rate of 6.25% simple interest based on prime rate in effect at the time

---

[10] While the prime rate has varied since 2008, the overall average rate has been approximately 3.5%, which was the prime rate at the time of entry of judgment in this case.

infringement began).  Accordingly, the Court will award prejudgment interest at a simple interest rate[11] of 3.39%[12] from March 5, 2008, the date that infringement commenced,[13] to July 8, 2016, the date of the entry of judgment, on the amount of damages awarded by the jury.

## 2.     Post-Judgment Interest

As the prevailing party, the Plaintiff is also entitled to an award of post-judgment interest pursuant to 28 U.S.C. § 1961(a) (allowing post-judgment interest "on any money judgment in a civil case recovered in a district court"). Such interest is "calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment," which in this case is 0.45%.  Id.  Accordingly, the Court concludes that the Plaintiff is entitled to

---

[11] Neither party requested that prejudgment interest be compounded in any way.

[12] According to the Federal Reserve, the prime rate was 3.25% from December 16, 2008 to December 1, 2015.  At the time infringement commenced, however, it was 5.25%, and since December 1, 2015 it has been 3.5%.  The mean of these rates over this period, weighted on a monthly basis, is 3.39%.

[13] The Plaintiff initially requested prejudgment interest only from the date that the lawsuit was filed, July 30, 2010.  [See Doc. 256 at 2].  After the Defendants pointed out that prejudgment interest is available from the date that the infringement began [see Doc. 266 at 13-14], the Plaintiff modified its request to the earlier date [see Doc. 274 at 3].

post-judgment interest on the total judgment, which includes the damages award of $852,000, the prejudgment interest award as assessed by this Order,[14] and any costs as assessed by the Clerk of Court.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1)    Plaintiff's Motion for Attorney's Fees [Doc. 225] is **DENIED**;

(2)    Defendants' Renewed Motion for Judgment as a Matter of Law on Damages, or for a New Trial on Damages, or for a Remittitur [Doc. 236] is **DENIED**;

(3)    Plaintiff's Motion for Enhanced Damages [Doc. 250] is **DENIED**; and

(4)    Plaintiff's Motion for Prejudgment Interest and Post-Judgment Interest [Doc. 256] is **GRANTED**.

An Amended Judgment shall be entered consistent with this Order.

**IT IS SO ORDERED.**

Signed: December 28, 2016

Martin Reidinger
United States District Judge

---

[14] Post-judgment interest is to be calculated on the full amount of the award including pre-judgment interest.  Quesinberry v. Life Ins. Co of N.A., 987 F.2d 1087 (4th Cir. 1993)(en banc).

33